UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BROWNSTONE AGENCY, INC and MURPHY & JORDAN,
L.L.C.,

                              Plaintiffs,

            -against-

EUGENE J. CALLAGHAN, JOHN A. GLOISTEIN, and
E & J AGENCY, INC,

                              Defendants.
------------------------------------------------------------x

DOCKET NO.:
1:08-CV-00522-LTS

**COMPLAINT**

        Plaintiffs, BROWNSTONE AGENCY, INC and MURPHY & JORDAN, L.L.C. ("plaintiffs,") by their attorneys, Rebore, Thorpe & Pisarello, P.C., complaining of the defendants, EUGENE J. CALLAGHAN, JOHN A. GLOISTEIN, and E & J AGENCY, INC ("Defendants"), as and for their complaint, allege as follows:

**INTRODUCTION**

        1.    Plaintiffs bring this action against defendants to recover monetary damages for loss of profits and loss of business opportunities, based upon common law tort and contract claims, including breach of contract, breach of fidelity and breach of fiduciary duty, intentional interference with contract, intentional interference with advantageous business relations, misappropriation of proprietary business information, and prima facie tort.

**JURISDICTION AND VENUE**

        2.    This action was originally commenced in the Supreme Court of the State of New York, County of New York, by the filing of a Summons with Notice on January 17, 2008.

3. Concurrently, a motion for injunctive relief, brought by Order To Show Cause, was submitted to the Supreme Court. A Request for Judicial Intervention was also filed therewith.

4. Prior to the return date of the Order To Show Cause, the action was removed by the defendants to the United States District Court for the Southern District of New York based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332.

5. As the place where plaintiffs are doing business, where defendants Callaghan and Gloistein were employed, and where the acts complained of took place, venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

5. Brownstone Agency, Inc. (hereinafter "Brownstone") is a corporation licensed to do business in New York, which is engaged in, among other things, the marketing and brokering of insurance policies to a variety of entities including property owners, commercial concerns, private individuals and trucking companies. It maintains its office at 32 Old Slip, New York, NY.

6. Murphy & Jordan, L.L.C. (hereinafter "Murphy & Jordan") is a New York limited liability company which is wholly owned by Brownstone, and is in the business of insurance brokering and providing insurance services and policies. Originally a separate entity, Murphy & Jordan was purchased by Brownstone approximately four years ago.

7. Eugene A. Callaghan (hereinafter "Callaghan") was a

senior employee of Brownstone, with the title of managing director. He also held the title of Vice President of Murphy & Jordan. He was in charge of brokerage production and insurance benefits coverage for Brownstone and Murphy & Jordan, with underwriting authority for both, as well as the various insurance carriers that those entities utilized, including insurance companies such as AIG, Everest and Crum & Forster. He managed Brownstone employees in this capacity, including defendant Gloistein.

8.   John A. Gloistein (hereinafter "Gloistein") was an employee of Brownstone who worked as a registered agent in the brokerage production department under Callaghan.

9.   E & J Agency, Inc. (hereinafter "E & J") is a New Jersey corporation that was formed on November 1, 2007. The registered agent for the corporation is Gloistein.

10.  E & J was formed by Callaghan and Gloistein, for the general purpose of providing insurance brokerage services and for the purpose of transferring Brownstone insurance accounts to themselves while both were still employed by Brownstone.

## FACTS

11.  Brownstone is a corporation licensed to do business in the State of New York, with offices and primary place of business located at 32 Old Slip, New York, New York. It has approximately 85 employees and is primarily in the business of marketing, selling, and placing insurance policies in New York City and elsewhere, as well as underwriting, adjusting losses, and managing claims under

the policies it issues.

12. Murphy & Jordan is an insurance brokerage that handles insurance placements. It is wholly owned by Brownstone and operates out of the same offices in New York City.

13. Callaghan and Gloistein were both employed by Brownstone in its New York City office prior to and during November, 2007.

14. Callaghan had been employed for approximately 28 years through Murphy & Jordan, and later through Brownstone.

15. Gloistein was employed for approximately 6 years.

16. In November 2007, Callaghan was one of three managing directors at Brownstone, supervising producers and underwriters, and handling insurance brokerage accounts through Brownstone and Murphy & Jordan.

17. Gloistein worked primarily as a producer for Murphy & Jordan.

18. Both Callaghan and Gloistein were still regularly employed and being paid by Brownstone in the first week of January, 2008.

19. While they were still employed, neither Callaghan nor Gloistein sought or obtained permission from any officers, director or shareholder at Brownstone to establish a competing corporation or brokerage agency.

20. While they were still employed, neither Callaghan nor Gloistein informed anyone else at Brownstone and Murphy & Jordan that they had formed E & J.

21. On December 28, 2007, Callaghan verbally informed the majority shareholder of Brownstone, John Cassara, that he intended to resign his position and employment from Brownstone effective February 15, 2008.

22. On January 7, 2008, several longstanding insurance clients of Murphy & Jordan began directly notifying their insurance carrier, Crum & Forster, that "effective immediately E & J Agency, Inc. &/or Eugene J. Callaghan 350 Main Road Montville, as our insurance representative and producer of record on all insurance matters"

23. These clients included various entities generally referred to as Chopper Express or Chopper Logistics Group, with the individual entities being CTX – Lambie, CTX – TL, CTX Logistics, KVC Logistics Corp., CMD Logistics Corp., TMD Logistics Corp., Trucks on the Run, Inc., Pumpernickel Express, Inc., JWB Logistics, Inc., MFC Logistics Corp., and Valerie Logistics, Inc.

24. These clients were all serviced and managed by Callaghan in the course of his employment by Brownstone and Murphy & Jordan.

25. This information first became known to the other Brownstone directors and employees on January 8, 2008, when notifications were received by Brownstone and Murphy & Jordan from the carrier, Crum & Forster, via two e-mail messages to Brownstone that Crum & Forster was in receipt of valid Producer of Record letters signed by an officer of the aforementioned companies requesting the changes.

26. The change in a Producer of Record by Crum & Forster means that the commissions for the production of those insurance policies will be transferred from Brownstone to this new entity.

27. This will result in a loss of invoiced sales and resulting profits to Brownstone.

28. Said e-mails also advised that Crum & Forster would only recognize Brownstone or Murphy & Jordan as the Producer of Record if a superseding letter were received by January 16, 2008.

29. The effect of the change in the Producer of Record from Brownstone and/or Murphy & Jordan to Callaghan and/or E & J for these accounts is the projected loss of invoice amounts of $12,634,000 for Brownstone.

30. A corresponding loss of profits to Brownstone of approximately $1.05 million annually is incurred as a result.

31. At the time Brownstone received these e-mail messages from Crum & Forster, no one at Brownstone was aware of the existence of E & J as a competing entity.

32. It was subsequently learned through investigation that E & J is a New Jersey corporation formed on November 1, 2007, which identifies its managing agent as Gloistein.

33. An office and computer with an e-mail account was provided to and used by Callaghan, in furtherance of his employment, for the purpose of handling Brownstone and Murphy & Jordan business.

34. Messages were sent by Callaghan via this e-mail account

to solicit Brownstone clients to transfer their insurance business to himself and/or E & J while he was still employed as a managing director of Brownstone.

35. Arrangements and plans were being made with Brownstone clients by Callaghan for the transfer of business via a change in the Producer of Record designation from Brownstone and Murphy & Jordan customers to himself and/or E & J.

36. Callaghan was making and receiving contact from others in the insurance industry about transferring the "book of business" when he departs Murphy & Jordan.

37. Callaghan was using his Brownstone telephone direct line and computer e-mail to facilitate such contacts.

38. The contacts that Callaghan was making while still employed were all part of the book of business maintained by Brownstone and Murphy & Jordan.

39. Those contacts were made and maintained by Callaghan during the course of his many years of employment with Brownstone and Murphy & Jordan.

40. Callaghan was asked to vacate the Brownstone offices on the afternoon of January 8, 2008 when this information became clear to the majority shareholders and the other Brownstone managing directors.

41. Gloistein was not in the office that day, and did not return to work thereafter except to collect belongings from his desk.

42. A letter dated December 19, 2007 was received by Callaghan from Gloistein, wherein Gloistein submitted his resignation to Callaghan.

43. Therein, Gloistein informed that he would be terminating his employment with Brownstone effective December 31, 2007.

44. Callaghan did not disclose this letter or its contents to anyone at Brownstone.

45. A resignation under any normal circumstances would be disclosed to directors.

46. Although the letter indicated that Gloistein submitted his resignation to Callaghan to be effective December 31, 2007, Gloistein continued to come to Brownstone's office for work after that date.

47. Since no one at Brownstone other than Callaghan knew of Gloistein's resignation, there was nothing noticed to be unusual about his presence in the office.

48. Gloistein was provided with a computer with an e-mail account to be used in furtherance of his employment, for the purpose of handling Brownstone and Murphy & Jordan business and accounts.

49. On January 4, 2008, Gloistein used this e-mail account to attempt to divert a Murphy & Jordan client to a competitor by advising him of the availability of quotes from a competing agency, Distinguished Programs, which was opened last year to directly compete with Brownstone.

50. Both of these employees, while planning their departure in November and December, had access to Brownstone's proprietary information, including its customer list and contact information.

51. Both of these employees, while planning their departure in November and December, had access to all information necessary to make quotes, issue policies, transfer business, and arrange for themselves, rather than Brownstone or Murphy & Jordan, to receive designations as Producers of Record for carriers, with accompanying commissions.

52. This proprietary contact information and related policy information was utilized by Callaghan and Gloistein to transfer Brownstone and Murphy & Jordan business to themselves and/or E & J.

53. On January 14, 2008, Brownstone received additional notices requesting changes of Producer of Record, from Crum & Forster, from two additional Brownstone/Murphy & Jordan clients, Rate Transport and Devcon International.

54. These entities were not part of the Chopper Express account, and are separate and distinct clients of Brownstone/Murphy & Jordan.

55. The projected loss of invoice amounts for the Devcon account is $4.1 million, with an anticipated profit loss to Brownstone of $494,000.

56. The invoice amount for Rate Transport is $361,000, with profit losses anticipated to be $34,000.

57. Correspondence was received on January 16, 2008 from

Fireman's Fund, an insurance carrier, dated January 11, 2008, notifying of Broker of Record change requests for Eugene Callaghan or E & J Agency on other Chopper Express policies that were placed.

58. Brownstone also received correspondence via facsimile from Joseph Guttilla, CEO of Chopper Express, indicating that effective January 9, 2008, Callaghan "has assumed the responsibilities of Risk Manager for the Chopper Logistics Group Companies," identifying 21 of his insured companies that fall within this group and requesting that Brownstone appoint a person to deal with Callaghan on these matters.

59. He also notified Brownstone/Murphy & Jordan that his personal insurance matters will be managed by Callaghan.

60. Callaghan and Gloistein, individually and through their corporation, E & J, began attempting to transfer business and commissions from Brownstone and Murphy & Jordan to themselves, while they were still employed by Brownstone, still receiving salary and commissions from Brownstone, and still reporting to Brownstone's offices for their regular employment.

61. Callaghan and Gloistein, individually and through their corporation, E & J, have diverted longstanding substantial clients from Brownstone to themselves while they were still employed by Brownstone. In order to accomplish this, they have utilized Brownstone's proprietary information, as well as its offices, telephones and computers to contact clients and solicit business for themselves.

62. Callaghan and Gloistein, individually and through their corporation, E & J, utilized Brownstone's information and contacts to arrange such transfers. The contact information they are utilizing could only be obtained by them through records kept and maintained by Brownstone and/or Murphy & Jordan.

63. Callaghan did not give notice of intent to resign from Brownstone until two months after his competing corporation had been incorporated in New Jersey.

64. Callaghan failed to disclose Gloistein's resignation letter and allowed Gloistein to come into Brownstone's offices after his purported resignation.

65. Gloistein attempted to divert at least one client to a competitor while still employed by Brownstone.

66. Callaghan remained as an employee and a member of the Board of Directors of Brownstone, with a fiduciary duty to Brownstone, while simultaneously establishing a competing business.

67. Gloistein remained as an employee of Brownstone, with a duty of fidelity to Brownstone, while simultaneously establishing a competing business.

## AS AND FOR A FIRST CAUSE OF ACTION

68. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs set forth with the same force and effect as if set forth at length herein.

69. Defendants Callaghan and Gloistein have breached their employment contract with the plaintiffs.

70. As a result of this breach, plaintiffs have sustained damages including the loss of their customers, loss of profits, loss of income and loss of business opportunities.

71. Plaintiffs are also entitled to an award of pre-judgment interest, costs and disbursements.

**AS AND FOR A SECOND CAUSE OF ACTION**

72. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs set forth with the same force and effect as if set forth at length herein.

73. Defendants Callaghan and Gloistein have breached their duty of fidelity to the plaintiffs, their employer.

74. As a result of this breach, plaintiffs have sustained damages including the loss of their customers, loss of profits, loss of income and loss of business opportunities.

75. Plaintiffs are also entitled to an award of pre-judgment interest, costs and disbursements.

**AS AND FOR A THIRD OF ACTION**

76. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs set forth with the same force and effect as if set forth at length herein.

77. Defendant Callaghan has breached his fiduciary duty to the plaintiffs, his employer.

78. As a result of this breach, plaintiffs have sustained damages including the loss of their customers, loss of profits, loss of income and loss of business opportunities.

79. Plaintiffs are also entitled to an award of pre-judgment interest, costs and disbursements.

### AS AND FOR A FOURTH CAUSE OF ACTION

80. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs set forth with the same force and effect as if set forth at length herein.

81. Defendants Callaghan, Gloistein and E & J have intentionally interfered with the contracts between the plaintiffs and their clients.

82. As a result of this tortious interference, plaintiffs have sustained damages including the loss of their customers, loss of profits, loss of income and loss of business opportunities.

83. Plaintiffs are also entitled to an award of pre-judgment interest, costs and disbursements.

### AS AND FOR A FIFTH CAUSE OF ACTION

84. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs set forth with the same force and effect as if set forth at length herein.

85. Defendants Callaghan, Gloistein and E & J have intentionally interfered with the advantageous business relationships between the plaintiffs and their clients.

86. As a result of this tortious interference, plaintiffs have sustained damages including the loss of their customers, loss of profits, loss of income and loss of business opportunities.

87. Plaintiffs are also entitled to an award of pre-judgment

interest, costs and disbursements.

## AS AND FOR A SIXTH CAUSE OF ACTION

88. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs set forth with the same force and effect as if set forth at length herein.

89. Defendants Callaghan, Gloistein and E & J have misappropriated proprietary business information of the plaintiffs.

90. As a result of this tortious misappropriation, plaintiffs have sustained damages including the loss of their customers, loss of profits, loss of income and loss of business opportunities.

91. Plaintiffs are also entitled to an award of pre-judgment interest, costs and disbursements.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment against the defendants and each of them as follows:

1. Awarding plaintiff monetary damages for all loss of their customers, loss of profits, loss of income and loss of business opportunities resulting from the acts of the defendants in an amount to be determined at trial; and

2. Directing defendants to take such action as is necessary to ensure that the effects of these actions and practices are eliminated; and

3. Directing the defendants to make plaintiff whole for all monetary and economic losses sustained as a result of defendants actions; and

4. Awarding plaintiffs the costs, disbursements and lawful fees together with pre-judgment interest; and

5. Granting such other and further relief as is just, necessary and proper.

Dated: February 15, 2008
       Farmingdale, NY

Timothy J. Dunn, III (TD/2349)
REBORE, THORPE & PISARELLO, P.C.
Attorneys for Plaintiffs
By: Timothy J. Dunn, III (TD 2349)
500 Bi-County Blvd., Suite 214N
Farmingdale, NY 11735
631-249-6600

To: Donia Sawwan, Esq. (DS 9338)
    Fox Rothschild LLP
    Attorneys for Defendants
    100 Park Avenue Suite 1500
    New York, New York 10017
    212-878-7900

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the Complaint to be served on Defendant on February 15, 2008, via United States Postal Service, Postage Paid First Class Mail, to:

Donia Sawwan, Esq.
Fox Rothschild LLP
100 Park Avenue
Suite 1500
New York, NY 10017

I further certify that the foregoing statements are true, and that any willfully false statement made by me is subject to punishment.

_____
Timothy J. Dunn, III (TD/2349)

Certified this 15st day of February, 2008