**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Donia Sawwan, Esq. (DS/9338)
100 Park Avenue, Suite 1500
New York, NY 10017
Telephone:   (212) 878-7900
Facsimile:   (212) 692-0940
*dsawwan@foxrothschild.com*

Attorneys for Defendants
Eugene J. Callaghan, John Gloistein,
and E & J Agency, Inc.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROWNSTONE AGENCY, INC. and MURPHY & JORDAN, <br><br> Plaintiff, <br><br> vs. <br><br> EUGENE J. CALLAGHAN, JOHN GLOISTEIN, E & J AGENCY, INC. <br><br> Defendants. | Civil Action No. 1:08-cv-522 (LTS)(FM) <br><br><br> **ANSWER AND COUNTER-CLAIM** |

Defendants Eugene J. Callaghan, John Gloistein, and E & J Agency, Inc. by and through

their counsel, Fox Rothschild LLP, state in answer to the Plaintiff's Complaint as follows:

**AS TO THE NATURE OF THE ACTION AND THE PARTIES**

1.     Defendants deny the allegations contained in paragraph 1 except to admit that

Plaintiffs filed this action alleging various causes of action, which Defendants specifically deny,

and for which Plaintiffs are seeking monetary relief.

2.     Defendants deny the allegations contained in paragraph 2 except to admit that this action was originally commenced in the Supreme Court of the State of New York, County of New York.

3.     Defendants admit the allegations contained in paragraph 3.

4.     Defendants admit the allegations contained in paragraph 4.

5.     The allegations contained in paragraph 5 constitute a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in paragraph 5.

## AS TO PARTIES

5.     Defendants note that Plaintiffs' Complaint contains two paragraphs numbered "5."  Defendants admit the allegations contained in this paragraph 5 as to the Parties.

6.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6, except to admit that Murphy & Jordan, LLC is a New York limited liability company which is now wholly owned by Brownstone.

7.     Defendants deny the allegations contained paragraph 7 except to admit that Defendant Eugene Callaghan was an employee of Brownstone with the title of managing director, and that he managed employees in that capacity, and was involved in the production of insurance benefits coverage.

8.     Defendants deny the allegations in paragraph 8 except to admit that the Defendant Gloistein was an employee of Brownstone.

9.     Defendants admit the allegations contained in paragraph 9.

10.     Defendants deny the allegations contained in paragraph 10 except to admit that E & J Agency, Inc. was formed by Defendant Callaghan and Defendant Gloistein.

2

## AS TO FACTS

11.    Defendants admit the allegations contained in paragraph 11.

12.    Defendants admit the allegations contained in paragraph 12.

13.    Defendants admit the allegations contained in paragraph 13.

14.    Defendants admit the allegations contained in paragraph 14.

15.    Defendants admit the allegations contained in paragraph 15.

16.    Defendants deny the allegations contained in paragraph 16 except to admit that Defendant Callaghan was one of three managing directors at Brownstone.

17.    Defendants deny the allegations contained in paragraph 17.

18.    Defendants deny the allegations contained in paragraph 18.

19.    Defendants deny the allegations contained in paragraph 19.

20.    Defendants deny the allegations contained in paragraph 20.

21.    Defendants deny the allegations contained in paragraph 21 except to admit that on December 28, 2007 Callaghan verbally informed John Cassara of his resignation.

22.    Defendants deny the allegations contained in paragraph 22 except to admit on or about January 7, 2008, various clients of Defendants provided notice that the E & J Agency, Inc. and/or Eugene J. Callaghan were the insurance representatives and Producer of Record on certain insurance matters.

23.    Defendants deny the allegations contained in paragraph 23.

24.    Defendants deny the allegations contained in paragraph 24.

25.    Defendants deny the allegations contained in paragraph 25 except to admit that Crum & Forster advised via e-mail that it had received two valid Producer of Record letters signed by officers of Rate Transport and Devcon International requesting that all matters

RL1 695933v2 02/22/08

pertaining to the property and casualty placements be transferred to E & J Agency, Inc. and/or Eugene J. Callaghan. The letter further advised that if Plaintiffs desired to be recognized by Crum & Forster as authorized Producer of Record on the accounts, they must obtain and present a superseding Producer of Record letter.

26.    Defendants deny the allegations contained in paragraph 26.

27.    Defendants deny the allegations contained in paragraph 27.

28.    Defendants deny the allegations contained in paragraph 28 except to admit that Crum & Foster advised that it would only recognize Plaintiffs as Producer of Record if a superseding letter were received.

29.    Defendants deny the allegations contained in paragraph 29.

30.    Defendants deny the allegations contained in paragraph 30.

31.    Defendants deny the allegations contained in paragraph 31.

32.    Defendants deny the allegations contained in paragraph 32.

33.    Defendants admit the allegations contained in paragraph 33.

34.    Defendants deny the allegations contained in paragraph 34.

35.    Defendants deny the allegations contained in paragraph 35.

36.    Defendants deny the allegations contained in paragraph 36 except to admit that pursuant to the agreement of the parties, Defendant Callaghan had a "book of business" proprietary to him which he was responsible for obtaining and servicing during his employment.

37.    Defendants deny the allegations contained in paragraph 37.

38.    Defendants deny the allegations contained in paragraph 38.

39.    Defendants deny the allegations contained in paragraph 39.

40.     Defendants deny the allegations contained in paragraph 40 except to admit that Defendant Callaghan was asked to vacate the premises on the afternoon of January 8, 2008 and has not returned to the facility.

41.     Defendants admit the allegations contained in paragraph 41.

42.     Defendants deny the allegations contained in paragraph 42.

43.     Defendants deny the allegations contained in paragraph 43.

44.     Defendants deny the allegations contained in paragraph 44.

45.     Defendants admit the allegations contained in paragraph 45.

46.     Defendants deny the allegations contained in paragraph 46.

47.     Defendants deny the allegations contained in paragraph 47.

48.     Defendants deny the allegations contained in paragraph 48 except to admit that Gloistein was provided with a computer and e-mail account.

49.     Defendants deny the allegations contained in paragraph 49.

50.     Defendants deny the allegations contained in paragraph 50.

51.     Defendants deny the allegations contained in paragraph 51.

52.     Defendants deny the allegations contained in paragraph 52.

53.     Defendants deny the allegations contained in paragraph 53 except to admit additional notices of changes of Producer of Record have been produced.

54.     Defendants deny the allegations contained in paragraph 54.

55.     Defendants deny the allegations contained in paragraph 55.

56.     Defendants deny the allegations contained in paragraph 56.

57.     Defendants deny the allegations contained in paragraph 57 except to admit additional notices of changes of producer of record have been produced.

RL1 695933v2 02/22/08

58.     Defendants admit the allegations contained in paragraph 58.

59.     Defendants admit the allegations contained in paragraph 59.

60.     Defendants deny the allegations contained in paragraph 60.

61.     Defendants deny the allegations contained in paragraph 61.

62.     Defendants deny the allegations contained in paragraph 62.

63.     Defendants deny the allegations contained in paragraph 63.

64.     Defendants deny the allegations contained in paragraph 64.

65.     Defendants deny the allegations contained in paragraph 65.

66.     Defendants deny the allegations contained in paragraph 66.

67.     Defendants deny the allegations contained in paragraph 67.

## AS AND TO THE FIRST CAUSE OF ACTION

68.     Defendants repeat and make a part hereof, as if set forth fully at length, their answers to all the preceding paragraphs of Plaintiffs' Complaint.

69.     Defendants deny the allegations contained in paragraph 69.

70.     Defendants deny the allegations contained in paragraph 70.

71.     Defendants deny the allegations contained in paragraph 71.

## AS AND TO THE SECOND CAUSE OF ACTION

72.     Defendants repeat and make a part hereof, as if set forth fully at length, their answers to all the preceding paragraphs of Plaintiffs' Complaint.

73.     Defendants deny the allegations contained in paragraph 73.

74.     Defendants deny the allegations contained in paragraph 74.

75.     Defendants deny the allegations contained in paragraph 75.

RL1 695933v2 02/22/08

### AS AND TO THE THIRD CAUSE OF ACTION

76.     Defendants repeat and make a part hereof, as if set forth fully at length, their answers to all the preceding paragraphs of Plaintiffs' Complaint.

77.     Defendants deny the allegations contained in paragraph 77.

78.     Defendants deny the allegations contained in paragraph 78.

79.     Defendants deny the allegations contained in paragraph 79.

### AS AND TO THE FOURTH CAUSE OF ACTION

80.     Defendants repeat and make a part hereof, as if set forth fully at length, their answers to all the preceding paragraphs of Plaintiffs' Complaint.

81.     Defendants deny the allegations contained in paragraph 81.

82.     Defendants deny the allegations contained in paragraph 82.

83.     Defendants deny the allegations contained in paragraph 83.

### AS AND TO THE FIFTH CAUSE OF ACTION

84.     Defendants repeat and make a part hereof, as if set forth fully at length, their answers to all the preceding paragraphs of Plaintiffs' Complaint.

85.     Defendants deny the allegations contained in paragraph 85.

86.     Defendants deny the allegations contained in paragraph 86.

87.     Defendants deny the allegations contained in paragraph 87.

### AS AND TO THE SIXTH CAUSE OF ACTION

88.     Defendants repeat and make a part hereof, as if set forth fully at length, their answers to all the preceding paragraphs of Plaintiffs' Complaint.

89.     Defendants deny the allegations contained in paragraph 89.

90.     Defendants deny the allegations contained in paragraph 90.

RL1 695933v2 02/22/08

91.     Defendants deny the allegations contained in paragraph 91.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs have waived any claim they may have, which is denied, to seek relief against Defendants.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs are estopped and barred by their own conduct from recovering any relief.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims, or the damages they may recover, are barred or at least reduced by their failure to mitigate damages.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint is patently frivolous and should be withdrawn in accordance with Rule 11 of the Rules of Civil Procedure.

### SIXTH AFFIRMATIVE DEFENSE

Defendants did not breach any contract with Plaintiffs.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint is barred by Plaintiffs' own breach of contract.

### EIGHTH AFFIRMATIVE DEFENSE

Defendants did not breach any duty owed to Plaintiffs.

**WHEREFORE**, Defendants request judgment dismissing the Complaint against them with prejudice, together with their attorneys' fees and costs of suit.

RL1 695933v2 02/22/08

## COUNTERCLAIMS

Defendants/Counter-Plaintiffs Eugene J. Callaghan, John Gloistein and E & J Agency, Inc., (hereinafter collectively referred to as "Defendants"), by and through their attorneys, Fox Rothschild LLP, by way of Counterclaim against Plaintiffs/Counter-Defendants (hereinafter collectively referred to as "Plaintiffs"), say:

## BACKGROUND

1.     J.A. Insurance Consultants, Inc., (hereinafter referred to as "J.A. Insurance") is a Florida Corporation with its principal place of business located at 110 Phyllis Drive, Old Tappan, N.J.

2.     Defendant Gloistein is the sole owner/stockholder of J.A. Insurance.

3.     Defendant Callaghan became employed by Murphy & Jordan, Inc. in or about June 1980.

4.     In or about 2000, Murphy & Jordan, Inc. was dissolved and its successor in interest, Plaintiff Murphy & Jordan (hereinafter referred to as "M&J") was formed as a wholly owned subsidiary of Plaintiff Brownstone Agency (hereinafter referred to as "Brownstone").

5.     At that time, Defendant Callaghan became employed by M&J's parent company, Brownstone.

6.     At all times relevant to the within action, John Cassara owned 51% of the stock of Brownstone.

7.     At all times relevant to the within action, Bradley Brown owned 32 2/3% of the stock of Brownstone.

8.     At all times relevant to the within action, Gene Murphy owned the remaining 16 1/3% of the stock of Brownstone.

9

9.    At the time of Defendant Callaghan's hire by Murphy & Jordan, Inc., Murphy & Jordan, Inc. and Defendant Callaghan agreed that Defendant Callaghan would be paid a commission on all business brokered/produced by Callaghan.

10.    At the time of Defendant Callaghan's hire by Murphy & Jordan, Inc., the parties agreed that accounts brokered/produced and/or otherwise serviced by Defendant Callaghan would be divided into two categories:  (1) those that belonged to Callaghan (hereinafter referred to as "Callaghan's Proprietary Accounts") and (2) House Accounts belonging to plaintiff (hereinafter referred to as "House Accounts").

11.    Callaghan's Proprietary Accounts were defined as those brokered/produced by Callaghan.

12.    When Defendant Callaghan became employed by Brownstone in or about 2000, the parties continued this agreement and it was at all times understood by Defendant Callaghan and Plaintiffs that accounts brokered and/or otherwise serviced by Defendant Callaghan would continue to be divided into two categories: (1) Callaghan's Proprietary Accounts and (2) House Accounts and that Defendant Callaghan would be paid a commission on all business brokered/produced by Callaghan.

13.    In or about 1992, J.A. Insurance entered into an independent contractor agreement whereby it would broker insurance for its clients through Murphy & Jordan, Inc. in exchange for commissions.

14.    It was agreed among the parties that all accounts brokered by J.A. Insurance through Plaintiffs would remain clients of J.A. Insurance and Defendant Gloistein (hereinafter referred to as "Gloistein's Proprietary Accounts").

10

15.    Upon Murphy & Jordan, Inc.'s dissolution in or about 2000, the parties agreed that J.A. Insurance would continue to broker insurance for Gloistein's Proprietary Accounts through Plaintiff M&J.

16.    J.A. Insurance was to be paid commissions for such accounts.

17.    In or about 2004, it became clear that Plaintiff M&J was having difficulty appropriately servicing Gloistein's Proprietary Accounts as to insurance coverage which was purchased by said Accounts.

18.    As a result, it was agreed between J.A. Insurance, Defendant Gloistein and Plaintiff Brownstone that Gloistein would be added to Brownstone's payroll as an employee solely for purposes of servicing said Gloistein Proprietary Accounts as well as certain House Accounts of Plaintiffs as agreed upon by the parties.

19.    It was agreed and understood that Brownstone's employment of Gloistein would not alter the parties' agreement as to Gloistein Proprietary Accounts, and that all accounts brokered by J.A. Insurance would remain the property of J.A. Insurance and Gloistein.

20.    Subsequent to Gloistein's employment by Brownstone,  Plaintiff Brownstone continued to pay commissions as to such accounts to J.A. Insurance.

21.    J.A. Insurance was issued a 1099 form by Plaintiff Brownstone as to all such commission payments.

22.    Throughout his employment, Defendant Callaghan advised Plaintiffs of his desire to someday start his own business founded primarily upon Callaghan's Proprietary Accounts.

23.    Plaintiffs expressed no objection to Defendant Callaghan's plan.

11

24. Throughout his employment, Defendant Callaghan specifically advised John Cassara, Gene Murphy and others of his desire to someday start his own business founded primarily upon Callaghan's Proprietary Accounts.

25. Mr. Murphy expressed no objection to the plan.

26. Mr. Cassara expressed no objection to the plan.

27. Defendants were not subject to any non-competition agreement.

28. Insurance brokerage is not an exclusive business.

29. Clients are free to consult with more than one broker at any one time.

30. Information regarding accounts, rates, and customer names and addresses is readily available in the industry

31. For many years prior to 2007 throughout his employment with Plaintiffs, Defendant Callaghan received offers of employment from Chopper Logistics and/or its related entities (hereinafter collectively referred to as "Chopper").

32. During his employment with Plaintiffs, Defendant Callaghan advised Plaintiffs of said offers of employment by Chopper.

33. At all times all parties agreed and understood that Defendants were free, either separately and/or in combination with others, to establish and/or continue a business based upon their respective Proprietary Accounts.

34. At all times it was agreed and understood that should a business or businesses be established (or in the case of Gloistein continued), Defendants would continue to work during a mutually agreed upon transition period, and that during such transition period, the parties would provide for the transition of House Accounts to other employees and/or agents of Plaintiffs as designated by Plaintiffs.

## COUNT ONE

35.    Defendants repeat and reallege each and every allegation of paragraphs 1 through 34 as if set forth at length herein.

36.    In January 2007, James Nihian's employment was terminated by Plaintiff Brownstone.

37.    At the time Mr. Nihian earned approximately $150,000 and 25% of Brownstone's profits.

38.    In or about January 2007, Plaintiffs required Defendant Callaghan to assume Mr. Nihian's responsibilities.

39.    At the time, Defendant Callaghan requested that his compensation be adjusted upwards to compensate him for the additional responsibilities and duties.

40.    Plaintiffs, through Mr. Cassara, agreed that Defendant Callaghan's year-end compensation/profit sharing would be adjusted upward.

41.    As part of the responsibilities Defendant Callaghan assumed as a result of Mr. Nihian's termination, Defendant Callaghan assumed some employee benefits/human resources responsibilities for Plaintiff Brownstone.

42.    Prior to this, Defendant Callaghan was responsible for the employee benefits/human resources responsibilities for M&J.

43.    At this time, Defendant Callaghan now had access to payroll records for both Plaintiff Brownstone and Plaintiff M&J.

44.    In or about January/February 2007, Defendant Callaghan learned that Plaintiff Brownstone was improperly carrying non-employees on the Company's employee health insurance plan.

RL1 695933v2 02/22/08

45.     In particular, two board members (Charles Brown and Geraldine Simone) and one former employee (George Michel) were improperly being listed by Plaintiff Brownstone as employees of Brownstone even though they were, in fact, not employees.

46.     One employee (Selma Redlich) was removed from the payroll records to preserve her Social Security benefits but included on the employee health plans, contrary to Medicare requirements.

47.     Defendant Callaghan complained to Mr. Cassara that this was improper and illegal and that the coverage of the Company would be jeopardized by such conduct.

48.     Upon hearing Defendant Callaghan's complaints, Mr. Cassara became loud, abusive and hostile towards Defendant Callaghan.

49.     Mr. Cassara asked how Defendant Callaghan could dare to question Cassara's decisions.

50.     Defendant Callaghan explained that the coverage provided by the carrier required the covered individuals to be employees of the Company.

51.     After hearing the explanation, Mr. Cassara remained abusive.

52.     Mr. Cassara then directed Defendant Callaghan to falsify Company records in order to maintain the coverage for the non-employees.

53.     Mr. Cassara told Defendant Callaghan that if he did not do as he was told, he would be terminated.

54.     Defendant Callaghan refused to falsify the documents and/or otherwise participate in the illegal/improper activities.

55.     Defendant Callaghan reasonably believed the inclusion of these non-employees on the Company's health plan to be illegal and/or to constitute fraud on the part of plaintiff.

14

56.     In March 2007, Mr. Cassara asked Defendant Callaghan to report his automobile as being stolen.

57.     At the time he so advised Defendant Callaghan to report his automobile as stolen, Mr. Cassara was aware that the car had, in fact, not been stolen.

58.     Defendant Callaghan advised Mr. Cassara at the time of his request that his conduct was illegal and that he would not participate in the illegal action as requested.

59.     Defendant Callaghan reasonably believed the requested activity to be illegal and/or fraudulent.

60.     In response to Defendant's objection, Mr. Cassara threatened to terminate Defendant Callaghan.

61.     In 2007, Defendant Callaghan complained to Plaintiffs that unlicensed brokers should not be permitted to service accounts and/or provide insurance brokerage services.

62.     During the course of his employment, Defendant Callaghan was aware that certain employees of Plaintiffs, including Diane Vignola and Cynthia Brown, were not licensed insurance brokers.

63.     Mr. Murphy is not a licensed insurance broker.

64.     Despite the fact that Plaintiffs were aware that these employees were not licensed insurance brokers they employed them in the capacity of insurance brokers.

65.     Defendant Callaghan advised that it was illegal/improper for these employees to provide brokerage services without a broker's license.

66.     Plaintiffs ignored Callaghan's complaints.

15

67.    Plaintiff improperly retaliated against Defendant Callaghan in response to Defendant's objections, complaints and/or refusal to participate in improper/illegal conduct by plaintiff.

68.    This retaliation took the form of, among other things, verbal abuse, the creation of a hostile working environment, failure/refusal to honor agreements and compensation schemes, belittling and threatening behavior, refusing to honor Plaintiff's promise to adjust Defendant Callaghan's compensation, refusing to memorialize the commission agreement between the parties, intentionally breaching the parties' agreement as to accounts, and failing to pay commissions owed to Defendant.

69.    Plaintiff Brownstone failed and/or refused to make any upward adjustment in Defendant Callaghan's compensation.

70.    Plaintiff had a reputation for summarily terminating employer/contractors.

71.    As a result of said threats of termination, Mr. Callaghan suffered emotional distress.

72.    In February 2007, plaintiff failed to timely pay Defendant Callaghan the second installment of the agreed-upon bonus.

73.    Upon questioning the non-payment, Mr. Cassara berated Defendant Callaghan and threatened him with termination for daring to question him.

74.    On September 11, 2007, Mr. Cassara berated Defendant Callaghan for taking off a day of work.

75.    During this conversation, Mr. Cassara told Defendant Callaghan that he had to decide whether he wanted to remain employed by Plaintiff Brownstone.

RL1 695933v2 02/22/08

76.     On September 11, 2007, Plaintiffs, through Mr. Cassara again threatened to terminate Defendant's employment if he left the office without Cassara's express permission.

77.     On September 11, 2007, Mr. Cassara advised Defendant Callaghan that he was to stop what he was working on and instead work exclusively on handling a claim related to the rupture of an oil tank on a property owned by Mr. Cassara.

78.     Such claims handling was not the responsibility of Defendant Callaghan but rather of Brownstone's Claims Manager.

79.     Throughout the claims investigation, Mr. Cassara threatened Defendant Callaghan that his job would be in jeopardy if the insurance company did not quickly pay Mr. Cassara on his claim.

80.     When Defendant Callaghan advised Mr. Cassara of the insurance company's position relating to payment on the claim, Cassara again became hostile and abusive towards Defendant Callaghan.

81.     In October 2007, Plaintiff Brownstone refused to memorialize the commission agreement between the parties in writing.

82.     On October 8, 2007, Defendant Callaghan complained to Eugene Murphy and Bradley Brown of Brownstone about Mr. Cassara's hostile and abusive behavior and asked that Mr. Murphy make it stop.

83.     Despite the complaint, the hostile and abusive behavior did not stop.

84.     As a result of Cassara's constant abuse in retaliation for Callaghan's objection to and refusal to participate in Cassara's illegal and fraudulent insurance practices, in October 2007, Defendants Callaghan and Gloistein indicated to Murphy that they would be exploring other employment options.

85.    Specifically, on or about October 17, 2007, Defendants Callaghan and Gloistein met with Gene Murphy at Harry Hanover's Square Restaurant for lunch.

86.    Defendant Callaghan further advised Mr. Murphy that he had liked working at Brownstone but that he could no longer tolerate Mr. Cassara's constant abuse.

87.    Defendant Callaghan reminded Mr. Murphy that Chopper had repeatedly offered Mr. Callaghan a position with Chopper, and that as a result of retaliatory/harassing conduct by Mr. Cassara, Mr. Callaghan was considering accepting a Chopper offer and opening his own business.

88.    Plaintiffs failed to conduct any investigation of the complaint of retaliation/harassment.

89.    On the morning of December 28, 2007, Defendant Callaghan advised John Cassara by telephone that he had established his own brokerage firm and would be leaving Brownstone.

90.    Plaintiffs failed and/or refused to pay Defendant Callaghan owed commissions equaling approximately $125,000.00.

91.    As a direct and proximate result of Cassara's retaliatory conduct for Callaghan's whistle-blowing activity, Callaghan was constructively discharged from Plaintiffs and has suffered damages as a result.

**WHEREFORE**, Counterclaim Plaintiff/Defendant Eugene Callaghan demands judgment in his favor and against Plaintiff/ Counterclaim Defendants Brownstone Agency, Inc. and Murphy & Jordan for damages including compensatory damages, punitive damages, attorneys fees and costs and any other relief deemed reasonable and just.

## COUNT TWO

92.     Defendants repeat and reallege each and every allegation of paragraphs 1 through 91 of the Counterclaim as if set forth at length herein.

93.     In October 2007, Defendant Callaghan requested that the commission agreement of the parties be put into writing.

94.     Plaintiff Brownstone refused to memorialize the agreement.

95.     In or about October 2007, Defendant Callaghan was aware that Cassara and Murphy were contemplating selling Plaintiffs.

96.     In or about October 2007, Mr. Murphy agreed with Defendant Callaghan that given the contemplated sale of Plaintiffs, the commissions agreement should be memorialized in writing.

97.     The commission agreement between the parties was never memorialized in writing.

98.     Under New York law, Plaintiff was obligated to memorialize the commission agreement between the parties.

99.     Plaintiff Brownstone's conduct with respect to the non-payment of commissions and failure to memorialize the commission agreement constitutes a violation of New York's wage and hour law, McKinney's Labor Law §191.

100.    As a direct and proximate result of Plaintiff's non-payment of commissions and failure to memorialize the commission agreement between the parties, Defendant Callaghan has suffered damages as a result.

**WHEREFORE**, Counterclaim Plaintiff/Defendant Eugene Callaghan demands judgment in his favor and against Plaintiff/Counterclaim Defendants Brownstone Agency, Inc. and

19

Murphy & Jordan for damages including compensatory damages, punitive damages, attorneys fees and costs and any other relief deemed reasonable and just.

## COUNT THREE

101.    Defendants repeat and reallege each and every allegation of paragraphs 1 through 100 of the Counterclaim as if set forth at length herein.

102.    In the December 28, 2007 telephone call between Callaghan and Cassara, the parties agreed that pursuant to their preexisting oral agreement, Defendant Callaghan would remain with Brownstone for a mutually agreed upon period of time.

103.    Specifically, Callaghan advised Cassara that he would continue at Brownstone for up to six weeks, but that he was going to start taking of his new brokerage company during this transition period.

104.    Mr. Cassara agreed that during this transition period that Callaghan would wrap up his work at Brownstone, introduce his successor to the House Accounts, and begin setting up his new business venture.

105.    Mr. Cassara also offered Defendant Callaghan the option of remaining at Brownstone, but working out of New Jersey should he decide not to follow through with the new business.

106.    Also on December 28, 2007, Defendant Callaghan advised Brown that he was leaving Plaintiffs and had established his own business venture.

107.    Brown also agreed that Defendant Callaghan would remain at Plaintiffs for a certain period to help transition House Accounts.

108.    Also, on December 28, 2007, Defendant Gloistein advised Brownstone that he would be leaving plaintiff and proceeding with a business with Defendant Callaghan.

20

109.    On January 2, 2008, Defendant Callaghan spoke with Mr. Cassara *via* telephone regarding Callaghan's departure from Brownstone.

110.    The parties agreed that Mr. Callaghan would remain employed until on or about February 15, 2008 to provide for the transition of House Accounts.

111.    Mr. Cassara further stated that in the interim, Plaintiff would provide Mr. Callaghan with a full list of accounts for the purpose of specifically identifying which accounts were Callaghan's Proprietary Accounts and which were House Accounts.

112.    On the morning of January 8, 2008, Plaintiffs provided Defendant Callaghan with a full list of clients so that the parties could specifically identify and agree upon which clients were Callaghan's Proprietary Clients and which were House Accounts.

113.    On January 8, 2008, Plaintiffs terminated Defendant Callaghan and directed him to terminate Defendant Gloistein.

114.    Upon being terminated, Defendant Callaghan questioned Plaintiffs' agent and employee, John Simone, about obtaining his commissions.

115.    Simone acknowledged that commissions were due and owing and stated that he would get back to Defendant Callaghan regarding payment.

116.    Neither Simone nor anyone from Brownstone has responded to his request for payment of commissions.

117.    To date, Brownstone still has not paid Defendant Callaghan the commissions owed.

118.    As a direct and proximate result of Plaintiffs' breach of contract, Defendants Callaghan and Gloistein have suffered damages.

21

**WHEREFORE**, Counterclaim Plaintiff/Defendant Eugene Callaghan demands judgment in his favor and against Plaintiff/Counterclaim Defendants Brownstone Agency, Inc. and Murphy & Jordan for compensatory and any other relief deemed reasonable and just.

FOX ROTHSCHILD LLP

By: */s/ Donia Sawwan*
      Donia Sawwan, Esq. (DS/9338)
      FOX ROTHSCHILD LLP
      Attorneys for Defendants
      Eugene J. Callaghan, John Gloistein, and
      E & J Agency, Inc.
      100 Park Avenue, Suite 1500
      New York, New York 10017
      *dsawwan@foxrothschild.com*

Dated: February 22, 2008

RL1 695933v2 02/22/08

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2008 the foregoing Answer and Counter-claim was served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, upon the following parties and participants via regular mail:

Timothy J. Dunn, III, Esq.
Rebore, Thorpe & Pisarello, P.C.
500 Bi-County Blvd., Suite 214 N,
Farmingdale, New York 11735
*Attorney for Plaintiffs*

Annette Riley

Dated:    New York, New York
February 22, 2008

RL1 695933v2 02/22/08